**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JERRY M. BOHLER,               ) | |
|     Plaintiff,               ) | |
|         v.                     ) | Case No. 05-cv-1173 |
| ILLINOIS DEPARTMENT OF         ) | |
| CORRECTIONS, ROGER WALKER, JR.,) | |
| and BARBARA A. HURT,           ) | |
|     Defendants.             ) | |

## O P I N I O N and O R D E R

Before the Court is the Motion for Summary Judgment filed by Defendants, Roger Walker, Jr. and Barbara A. Hurt, on January 25, 2007 [Doc. 17]. For the reasons that follow, the Motion is GRANTED.

### BACKGROUND

Prior to August 1, 2003, Jerry M. Bohler, Plaintiff, was a correctional officer for the Illinois Department of Corrections ("IDOC"). (Jerry Bohler Deposition 43.) On August 1, 2003, Plaintiff became a Clinical Service Supervisor. (Bohler Dep. 43.) From December 1, 2003 to February 13, 2005, Plaintiff was employed as the Assistant Warden of Operations ("AWO") at the Illinois River Correctional Center ("IRCC") and was assigned the duties of an Acting Warden. (Bohler Dep. 50.) Defendant Roger Walker, Jr. is the Director of the Illinois Department of

Corrections and Defendant Barbara A. Hurt was a Deputy Director during the relevant time period.

Plaintiff indicates that prior to taking the job as an AWO, he was promised pay that would equal ten percent more than a Correctional Captain's pay.  (Bohler Dep. 69.)  However, upon taking the job, Plaintiff did not receive that salary.  (Bohler Dep. 69.)  In light of this discrepancy, Plaintiff complained to the Governor's office, the Attorney General's office, Representative Mike Smith, and Jim Underwood and Jim Reinhart, who both work in IDOC's personnel department.  (Bohler Dep. 73, 75, and 118.)  Plaintiff's complaints to each of these persons were only regarding his "pay situation."  (Bohler Dep. 71, 73, 75, and 77.)  At some point in March, 2004, Plaintiff's pay was corrected.  (Bohler Dep. 73.)

After becoming an AWO, Plaintiff was investigated by the Office of the Executive Inspector General for the improper use of an agency vehicle.  The investigation culminated in a 20-day "working suspension" that was imposed on February 9, 2005 and served upon Plaintiff by Defendant Hurt.  (Bohler Dep. 94.)  Plaintiff states that he believes that the investigation and suspension were "[b]ecause I was making a lot of calls to the Governor's office on my money."  (Bohler Dep. 84.)  That is, Plaintiff believes that Defendants Walker and Hurt were acting at the behest of Julie Curry, who works in the Governor's

2

office, when they suspended him in retaliation for calling the Governor's office regarding his salary. (Bohler Dep. 111.) Plaintiff also indicates that he was not afforded any process during the investigation and subsequent suspension.

The foregoing forms the basis of Plaintiff's First Amendment and Due Process claims. In his Complaint, filed on June 9, 2005, Plaintiff alleges that his due process rights were violated by Walker and Hurt when the suspension was instituted without using the procedures located in the Illinois Administrative Code (Count 1). Plaintiff further alleges that Walker and Hurt retaliated against him for exercising his free speech rights when they suspended him after he complained about his wages (Count 2). In the pending Motion Defendants Walker and Hurt seek summary judgment on these claims made against them in their individual capacities.[1]

## DISCUSSION

### Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

---

[1] These are the only claims remaining in this lawsuit. Counts 3, 4, and 5 were dismissed by an Order dated January 23, 2006.

56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial."  Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24.  "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."  Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]."  Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989).  In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable."  Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).  Therefore, if the record before the court "could not lead a

rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## Qualified Immunity

Qualified immunity must be determined at the earliest possible time in a lawsuit because it is immunity from suit rather than a defense to liability. Saucier v. Katz, 533 U.S. 194, 200-201 (2001). At its core, qualified immunity shields "[g]overnment actors performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether Defendants are entitled to qualified immunity, the Court must first ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. At the

summary judgment stage, the Seventh Circuit Court of Appeals, in repeating this first question, held that: "First, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right." Washington v. Haupert, 481 F.3d 543, 547 (7th Cir. 2007); See also Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it."). If the answer is yes, the Court must then ask whether the right was clearly established. Saucier, 533 U.S. at 201. Plaintiff does not dispute that Defendants are the type of officials who are entitled to assert a qualified immunity defense. See Moss v. Martin, 473 F.3d 694 (7th Cir. 2007) (applying the defense to employees of the Illinois Department of Transportation); Nanda v. Moss, 412 F.3d 836 (7th Cir. 2005) (applying the defense to the Dean of the College of Medicine, part of the University of Illinois). Therefore, the first question is whether the evidence reveals a reasonable possibility that Plaintiff's Constitutional rights were violated by Defendants.

### First Amendment Retaliation

Analysis of Plaintiff's § 1983 retaliation claim, alleging that he suffered an adverse job action because of protected speech, begins with a three part test. The Court must first

"assess[] whether the plaintiff's speech is constitutionally protected."  Phelan v. Cook County, 463 F.3d 773, 790 (7th Cir. 2006).  The Court next must determine if "plaintiff has demonstrated that the alleged retaliatory activity was motivated by the constitutionally protected speech."  Id.  Finally, the Court must determine whether "defendant has demonstrated that it would have taken the same action irrespective of the plaintiff's speech."  Id.

Recently, in Spiegla v. Hull, 481 F.3d 961 (7th Cir. 2007), the Seventh Circuit held that the first step in determining whether Plaintiff's speech is protected speech is whether Plaintiff spoke as a citizen rather than as an employee speaking pursuant to his official duties.  Id. at 2007 WL 937081, *4 (citing Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1960 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")).  The Court next must apply the two-part Connick-Pickering test: First, it must be determined, as a matter of law, whether Plaintiff's speech can be characterized as "speech on a matter of public concern," Connick v. Myers, 461 U.S. 138, 146 (1983); Second, the Court must balance the employee's and the employer's interests.  Pickering v. Bd. of

7

Educ. of Twp. High Sch. Dist. 205, Will County, Illinois, 391 U.S. 563, 568 (1968). Spiegla, at *4. The "content, form, and context of a given statement, as revealed by the whole record," determines whether a speech is on a matter of public concern. Connick, 461 U.S. at 147-148. Only if the speech is on a matter of public concern will the Court then employ the balancing test. Spiegla, at *4. In doing so, the Court balances the interests of the individual "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.

There is no question in this case that Plaintiff's speech was not made as an employee performing his official duties. There is also no doubt that Plaintiff's complaints about his salary were not a matter of public concern. In Gustafson v. Jones, 290 F.3d 895, 907 (7th Cir. 2002), the Seventh Circuit stated that: "The 'public concern' element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." Id. at 907 (citing Connick, 461 U.S. at 146). Plaintiff's complaints about his salary were a personal grievance that only was of interest to Plaintiff. Plaintiff first complained about his salary to the personnel department and then decided to complain

8

to the Attorney General and then the Governor's office.  There is no indication in the record that Plaintiff was commenting on the general state of salaries or about anything other than the fact that he was not being paid what he expected.  No jury would find that Plaintiff was commenting on a matter of public concern.

As Defendants point out, Plaintiff's claim is similar to the plaintiff's claim in Snider v. Belvidere Twp., 216 F.3d 616 (7th Cir. 2000).  In Snider, a female deputy assessor, Karen Snider, attended a township board meeting where she expressed her displeasure about her salary being equal to a newly hired male deputy assessor with less experience.  Id. at 617.  A couple of days later, she was called into a meeting with her supervisor where a shouting match ensued regarding the equal pay issue wherein Snider accused her supervisor of "paying the men in the office more than the women."  Id.  After Snider failed to abide by her supervisor's direction to not disrupt the harmony in the office and to not question his authority, she was fired for insubordination.  Id.  Snider claimed that she was retaliated against for complaining publicly about the sex-based discrimination in pay.  In affirming the district court's conclusion that the speech merely concerned a personal matter, the Seventh Circuit stated:

9

> Snider's complaints regarding her salary related to a personal concern. She simply wanted to be paid more than anyone else with less seniority. Such workplace speech, while personally important, does not address a matter of public concern, and thus does not merit First Amendment protection.

Id. at 620.

In a similar manner, Plaintiff's complaints regarding his pay were a personal concern, regardless of who he spoke to, that did not implicate a matter of public concern. The evidence reveals that Plaintiff only was concerned that he was not being paid what had been promised. As Plaintiff was not speaking on a matter of public concern, it is unnecessary to address the remaining portions of the Connick/Pickering test. Snider, 216 F.3d at 620.

In Plaintiff's brief, he argues that Defendants also retaliated against him for complaining about the "working suspension" policy of the IDOC. Pursuant to this policy, a management level employee is required to work, without pay, during a suspension. (Roger Walker Deposition 26-27). The purpose of this policy is to maintain the perception of authority and integrity of management vis-à-vis non-management, subordinate, employees in the prison setting. (Walker Dep. 26-27). Plaintiff, in his brief, argues that he complained to Hurt about this policy and that he was retaliated against as a

10

result. Plaintiff does not indicate what retaliatory action either Walker or Hurt pursued.

Defendants are correct in noting that this allegation was not made in Plaintiff's Complaint; nor can it be reasonably construed that Plaintiff was complaining about this particular speech when he alleged a First Amendment Retaliation claim. Plaintiff presented facts relating to the retaliation he believes he suffered as a result of his complaints about pay; however, the Complaint does not indicate that he also was retaliated against for complaining about the "working suspension." Besides the complete lack of proof regarding this claim,[2] Plaintiff may not attempt to amend his complaint through a response to a motion for summary judgment. <u>Whitaker v. T.J. Snow Co.</u>, 151 F.3d 661, 664 (7th Cir. 1998). As there is no showing that Defendants violated a Constitutional right, Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

## Due Process

Plaintiff's due process claim does concern the working suspension and Plaintiff's belief that Defendants failed to accord him due process in the imposition of the suspension. The Due Process Clause of the Fourteenth Amendment provides, in

---

[2] Plaintiff has not supported this contention with any citation to evidence.

11

relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  In order to pursue his due process claim, Plaintiff must show that he has a property interest in his employment.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  Such an interest can be created by independent sources such as state law.  Id.  Thus, in order to prove a violation of this due process rights, Plaintiff must show:

> (1) that he had a constitutionally protected property interest,
>
> (2) that he suffered an loss of that interest amounting to a deprivation and
>
> (3) that the deprivation occurred without due process of law.
>
> Allen v. Martin, 460 F.3d 939, 946 (7th Cir. 2006) (internal editing, quotation marks, and citation omitted).

Most of the cases cited by the parties refer to a property interest in continued employment.  However, there appears to be no dispute that Plaintiff's suspension "from a statutorily protected employment position" may be the basis of a Due Process claim.  See Luellen v. City of East Chicago, 350 F.3d 604, 613-614 (7th Cir. 2003).  As such, Plaintiff must show that he has a statutorily protected employment position and that his suspension from this position, without pay, See Lifton v. Bd. of

Educ. of City of Chicago, 416 F.3d 571, 578 (7th Cir. 2005), was effected without due process.

In his brief, Plaintiff does not point to any specific state statutory provision which indicates that he has a property interest in his job. Rather, he argues, in general, that his claim is "premised upon the State of Illinois Central Management Services Personnel Rules" without providing a citation to these rules and without providing any language from the rules that specifies the type of interest that he has in his job. In any event, this Court looks to state law in order to determine whether Plaintiff has a property interest in his job:

> Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement. 'To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him.'
>
> Moss, 473 F.3d at 700 (quoting Krecek v. Bd. of Police Comm'rs of La Grange Park, 646 N.E.2d 1314, 1318 (Ill. App. Ct. 1995)).

Thus, Plaintiff must point to some Illinois law that would limit the ability of the Defendants to suspend him.

Notwithstanding the lack of specific citation in his brief in response to the Motion for Summary Judgment, in his Complaint, Plaintiff cites to 80 Ill. Admin. Code 302.640

("section 302.640").[3]  Section 302.640 provides the procedures to be employed in the suspension of an employee for less than thirty days.  It provides for notice in writing six days prior to the suspension, the opportunity for a written rebuttal, and a decision in writing that is served upon the employee.  Id. Plaintiff cites to no other specific law, regulation, code, rule, or procedure that would otherwise confer a property interest in his job.

In Cain v. Larson, 879 F.2d 1424 (7th Cir. 1989), the Seventh Circuit Court of Appeals considered a situation where a police officer believed her due process rights were violated when she was investigated without using the procedures outlined in the Illinois Uniform Peace Officers' Disciplinary Act.  In assessing the claim, the Court stated:

> It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance.  In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion – as can be found, for example, in a requirement that employees be fired only 'for cause.'  If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate.

---

[3] This section of the Illinois Administrative Code is contained in a subtitle of Title 80 that is referred to as the Personnel Rules.

>  Id. at 1426 (citing Bishop v. Wood, 426 U.S. 341, 345-
>  47 (1976)).

A plaintiff must do more than cite to the procedures that are to be employed: a plaintiff must also cite to a specific provision which provides for the substantive right.  See Walters v. Vill. of Colfax, 466 F.Supp.2d 1046, 1058 (C.D.Ill. 2006).  In the present case, Plaintiff's citation to section 302.640 is merely a citation to the procedural rules to be employed in suspending an employee.  Section 302.640 makes no statement of what criteria must be used in suspending an employee – whether it be just cause or some other standard.  Plaintiff's argument, then, merely conflates the first (substantive) and third (procedural) requirements outlined in Allen, supra.  Plaintiff has therefore failed to assert any constitutionally protected interest in his job.

This threshold substantive requirement is evident in each cases Plaintiff has cited.  The Court in Shegog v. Bd. of Educ. of City of Chicago, 2000 WL 555504 (N.D.Ill. 2000), found no due process violation where there were no "person-specific" reasons for the layoffs in question.  Specifically, the court stated that a statute governing the criteria to be used in laying off individuals did not "establish specified substantive predicates to limit discretion and thus do[] not create a property interest."  Id. at *2.  Hohmeier v. Leyden Community High

15

Schools Dist. 212, 954 F.2d 461 (7th Cir. 1992), involved a written policy section, "Policy 4223," and the procedures outlined therein. Id. at 462. The Court held, in part, that the mere permissive language of the statute (i.e. indicating that an employee *may be* terminated for cause) does not create the "substantive predicate" upon which a Due Process claim can be based. Id. at 466. Beischel v. Stone Bank School Dist., 362 F.3d 430 (7th Cir. 2004), involved the non-renewal of an employment contract. The Court found that "[t]here are no statutory limitations as to the bases on which the nonrenewal decision can rest." Id. at 436. Therefore, there was no due process violation. In contrast to each of these cases, Plaintiff has failed to cite to any provision of any statute, ordinance, rule, regulation, handbook, or contract, that would indicate to the Court that he had a property interest in his job. As Plaintiff has failed to point to any specific independent source that would indicate that he has a constitutionally protected property interest in his job, there can be no due process violation. Therefore, Plaintiff has failed to show that the Defendants have violated a constitutional right and they are entitled to qualified immunity as a result.

This conclusion is reinforced by reference to the Personnel Code upon which the Personnel Rules are promulgated. 20 Ill.

Comp. Stat. 415/1.  According to section 415/11, an employee cannot be disciplined with a suspension in excess of thirty days "except for cause."  However, the section goes on to indicate that "[n]othing in this Section shall limit the authority to suspend an employee for a reasonable period not exceeding 30 days, in any 12 month period."  20 Ill. Comp. Stat. 415/11.  Similarly, the Personnel Rules governing a suspension lasting more than thirty days indicates that the written charges must contain "a clear and concise statement of facts showing good cause for such suspension."  80 Ill. Admin. Code 302.660.  Such a requirement is absent from section 302.640.  Therefore, neither the Personnel Code nor the Personnel Rules provide the substantive right upon which a due process claim can be based.  Regardless of whether the Personnel Code and Rules govern the Plaintiff's employment, Plaintiff's claim must fail as a matter of law.[4]

---

[4]  In light of this conclusion, the Court will not address whether Plaintiff's employment is exempt from the Personnel Code, whether the Plaintiff was afforded a constitutionally appropriate amount of process, or whether Plaintiff's rights were clearly established.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants, Roger Walker, Jr. and Barbara A. Hurt, on January 25, 2007 [Doc. 17] is GRANTED.  The Clerk is directed to enter judgment in favor of Defendants, Roger Walker, Jr. and Barbara A. Hurt and against Plaintiff Jerry M. Bohler.  As no other claims remain, this case is terminated.


Entered this  11th  day of May, 2007


                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                                       United States District Judge